**UNITED STATES COURT OF APPEALS**     October 13, 2016

**Elisabeth A. Shumaker**

**TENTH CIRCUIT**

SIMON SUE,

       Petitioner-Appellant,

v.

KRIS KLINE, Warden, Kit Carson
Correctional Center; CYNTHIA
COFFMAN, Attorney General for
State of Colorado,

       Respondents-Appellees.

No. 16-1104
(D.C. No. 1:15-CV-01055-RPM)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **HOLMES**, and **MORITZ**, Circuit Judges.

---

[*]    This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I

Petitioner-Appellant Simon Sue, a Colorado state prisoner sentenced in 2003 to a term of imprisonment of fifty-three years, seeks a certificate of appealability ("COA"), with the assistance of counsel, to challenge the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.

In his petition, Mr. Sue contends that he received ineffective assistance of counsel ("IAC") when counsel (1) ignored his alleged instructions to file an appeal in the aftermath of his aggravated sentence (opting instead to pursue a sentencing reconsideration motion under Colorado state court rules), and (2) otherwise failed to advise him of his appellate options. The state court denied his IAC claim on the merits, and the district court denied his § 2254 petition and declined to issue a COA. Mr. Sue now claims that these decisions ran "clearly" afoul of *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and requests that we issue a COA on his IAC claims.

Having thoroughly reviewed the relevant law and the record, we **deny** Mr. Sue's request for a COA and **dismiss** this matter.

## II

On February 25, 2003, the State of Colorado ("State") filed a multi-count amended criminal information in the District Court of Park County, Colorado, charging Mr. Sue with a laundry list of offenses, including first-degree murder,

2

conspiracy to commit first-degree murder, and witness tampering.[1]  *See* Pet'r's App., CD of State Court Pleadings, at 650–61 (Fourth Am. Info., filed Feb. 25, 2003).  Faced with the prospect of *consecutive* life sentences (without the possibility of parole), Mr. Sue pleaded guilty to three counts of conspiracy to commit first-degree murder and one count of violating the Colorado Organized Crime Act, Colo. Rev. Stat. Ann. § 18-17-101 to -109 ("COCA").  *See id.* at 641–46 (Plea Agreement, signed Feb. 25, 2003); *see also* Pet'r's App., CD of State Court Transcripts, at 998–1015 (Tr. Plea Hr'g, dated Feb. 25, 2003).  In exchange, the State dismissed the remaining charges, and stipulated that "the *total sentence*" on all pleaded counts would "be not less than forty years plus five years of parole" and not more than "sixty years plus five years of parole."  Pet'r's App., CD of State Court Pleadings, at 642 (emphasis added).  Nevertheless, at the plea hearing, the state court judge advised Mr. Sue that [1] the conspiracy counts carried "a term of imprisonment . . . of anywhere from 16 to 48 years plus a mandatory five year parole period," [2] the COCA count carried "a presumptive range of anywhere from 8 to 24 years plus 5 years of parole," [3] the *possible* sentencing ranges could be increased or decreased, depending upon any finding of

---

[1]     The State filed the initial Information on April 30, 2001, an Amended Information on August 28, 2001, a Second Amended Information on January 28, 2002, and a Third Amended Information on August 16, 2002.  *See* Pet'r's App., CD of State Court Pleadings, at 17–22 (Info., filed Apr. 30, 2001), 64–72 (Am. Info., copy transmitted Aug. 30, 2001), 122–32 (Second Am. Info., filed Jan. 28, 2002), 289–99 (Third Am. Info., filed Aug. 16, 2002).  The operative one here is the Fourth Amended Information, filed on February 25, 2003.  *See id.* at 650–61.

aggravating or mitigating circumstances, and [4] the plea had the effect of waiving, in primary part, his right to appeal. Pet'r's App., CD of State Court Transcripts, at 1004–08 (Tr. Plea Hr'g, dated Feb. 25, 2003). Mr. Sue advised the court, in turn, that he was executing the plea agreement knowingly and voluntarily and that he had received adequate assistance and consultation from his attorneys, Kaufman and Levinson, LLC, regarding his plea. *See id*. at 1012–13.

## A

Based on a finding of aggravating circumstances (essentially, the palpable risk of recidivism), and following testimony concerning the culpability of Mr. Sue's co-conspirators (Isaac Grimes, Jonathan Matheny, and Glenn Urban), on August 26, 2003, the state court judge sentenced Mr. Sue to three concurrent forty-five-year terms of imprisonment on the conspiracy counts and a consecutive eight-year term of imprisonment on the COCA count, followed by a mandatory five-year parole period. *See id*. at 1016–1285 (Tr. Sentencing Hr'g, dated Aug. 26, 2003). In addition, the state court judge advised him of his right to appeal from the sentence and resultant judgment of conviction, and to obtain, if eligible, court-appointed counsel for purposes of an appeal. *See id*. at 1284.

Rather than file an appeal, on December 24, 2003, Mr. Sue's retained trial counsel, Kaufman & Levinson, LLC, filed a motion to reduce his sentence under

4

Colorado Rule of Criminal Procedure 35(b),[2] on the grounds that state prosecutors

advanced inconsistent positions during the sentencing of Mr. Sue and one of his

co-conspirators, Jonathan Matheny. *See* Pet'r's App., CD of State Court

Pleadings, at 949–51 (Mot. for Reduction of Sentence, filed Dec. 24, 2003).

More specifically, Mr. Sue's trial counsel took issue with the fact that, during his

sentencing, state prosecutors argued as an aggravating circumstance that Mr. Sue

was "responsible for planning and implementing the [underlying] murders[,]" and

then took the diametrically opposite position during Mr. Matheny's sentencing

that *he* (and *not* Mr. Sue) "actually planned and created the protocol for the

[underlying] homicides." *Id.* at 949.

However, on June 29, 2004, James A. Castle, Esq., replaced Kaufman &

Levinson LLC as counsel for Mr. Sue. *See id*. at 685 (Substitution of Counsel,

filed June 29, 2004). Mr. Castle then moved to amend the Rule 35(b) motion to

---

[2]    Colorado Rule of Criminal Procedure 35(b) provides the procedural
mechanism for a criminal defendant to seek reconsideration of a sentence, and
specifically states, in relevant part, that the sentencing court

> may reduce the sentence provided that a motion for reduction of
> sentence is filed (1) within 126 days (18 weeks) after the
> sentence is imposed, or (2) within 126 days (18 weeks) after
> receipt by the court of a remittitur issued upon affirmance of the
> judgment or sentence or dismissal of the appeal, or (3) within
> 126 days (18 weeks) after entry of any order or judgment of the
> appellate court denying review or having the effect of upholding
> a judgment of conviction or sentence.

Colo. R. Crim. P. 35(b).

advance the argument that *Blakely v. Washington*, 542 U.S. 296 (2004)—a case decided nearly one year after Mr. Sue's sentence—rendered the aggravated sentence "unconstitutional." *Id.* at 687–89 (Mot. to Amend Mot. Filed Pursuant to Col. R. Crim. P. Rule 35(B) & for Continuance of Currently Scheduled Hr'g on the Mot., filed June 29, 2004). On September 21, 2004, however, Mr. Castle moved to withdraw as counsel at Mr. Sue's request, *see id.* at 690–91 (Mot. to Withdraw as Counsel for the Def., filed Sept. 21, 2004), 692–93 (Notice of Intent to Withdraw, filed Sept. 21, 2004), 694 (Order, dated Sept. 21, 2004); Mr. Sue then withdrew the Rule 35(b) motion filed through prior counsel, in favor of proceeding on his own contemporaneously-filed motion for correction of an illegal sentence under Colorado Rule of Criminal Procedure 35(a).[3] *See id.* at 704 (Mot. to Withdraw[] Mot. of 35(b), filed Oct. 26, 2004), 706–10 (Mot. to Correct Sentence, filed Oct. 26, 2004).

**B**

In his pro se motion ("*Sue I*"), Mr. Sue argued (like his prior counsel) that the state court's imposition of an aggravated sentence ran afoul of his Sixth

---

[3]    Colorado Rule of Criminal Procedure 35(a) provides the means for correcting an illegal sentence, and states that the sentencing court "may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided . . . for the reduction of sentence" under Colorado Rule of Criminal Procedure 35(b). Colo. R. Crim. P. 35(a).

Amendment right under the principles espoused in *Apprendi v. New Jersey*, 530

U.S. 466 (2000), and interpreted in *Blakely*. *See id*. at 706–10. On February 28,

2005, however, the state court found that his sentence did not violate either

decision, because Mr. Sue "implicitly and specifically admitted" to the

aggravating factors by "knowing[ly]" stipulating to "a sentence in the aggravating

range." Pet'r's App., Vol. I, at 18–21 (Tr. Rule 35 Hr'g, dated Feb. 28, 2005).

On appeal, the Colorado Court of Appeals ("CCA") affirmed, finding *Blakely*

inapplicable to sentences—like Mr. Sue's—that became final before June 24,

2004 (i.e., the date *Blakely* was issued), and determining, in any event, that Mr.

Sue's sentence comported with *Apprendi* because it rested within the "applicable

statutory maximum, as that term was understood before the announcement of

*Blakely*." *Id.* at 22–24 (Order, dated Feb. 1, 2007).

## C

During the pendency of the appeal, Mr. Sue's new counsel, Antony M.

Noble, Esq., filed a petition for post-conviction relief under Colorado Rule of

Criminal Procedure 35(c),[4] arguing, in relevant part, that Mr. Sue's counsel at the

time of sentencing (Kaufman & Levinson, LLC) provided ineffective assistance

by failing to object to the aggravated sentence and by failing to file a direct

---

[4]     Under certain circumstances, Colorado Rule of Criminal Procedure 35 allows criminal defendants to mount collateral attacks to their conviction and/or sentence, even after exhausting their direct appeal rights. *See* Colo. R. Crim. P. 35(c).

appeal ("*Sue II*").  *See* Pet'r's App., CD of State Court Pleadings, at 838–44 (Pet. for Post-Conviction Relief Pursuant to Crim. P. 35(c), filed Aug. 21, 2006). Following resolution of the initial appeal, the state court conducted an evidentiary hearing on Mr. Sue's motion, which spanned several nonconsecutive days.  *See* Pet'r's App., CD of State Court Transcripts, at 1365–1454 (Tr. Evidentiary Hr'g, dated May 2, 2008), 1455–82 (Tr. Evidentiary Hr'g, dated June 23, 2008), 1483–1650 (Tr. Evidentiary Hr'g, dated Aug. 22, 2008).

During the first day of the evidentiary hearing, May 2, 2008, Mr. Sue testified that his trial counsel went through the plea agreement with him "page by page" and "section by section," and explained to him that, in signing the plea agreement, he stipulated to a sentence between forty and sixty years and waived any appeal other than on the grounds of an illegal sentence, an illegal plea, and/or the imposition of a sentence beyond the agreed-upon range.  *Id.* at 1385–88. Nevertheless, Mr. Sue detailed his view that he received an unfair sentence that differed from what he bargained for, and claimed that he instructed his trial counsel, following sentencing, "to do something about" it—and specifically advised that he "want[ed] an appeal."  *Id*. at 1399; *accord id*. at 1428 (restating his claim that he told trial counsel that he "want[ed] an appeal" of his sentence). Mr. Sue then claimed that he reiterated his concerns through three subsequent telephone calls, in which he inquired more generally about the status of his

8

case—without mentioning the term "appeal"— and raised the prospect that his sentence ran afoul of *Apprendi*. *See id*. at 1400–03, 1426–36.

During the second day of substantive testimony, August 22, 2008, Mr. Sue's prior counsel at the time of sentencing (and shortly thereafter), Rick Levinson, Amy Kaufman, and James Castle, testified concerning their recollections of the handling of Mr. Sue's case. *See generally id*. at 1492–1584. Mr. Levinson stated, for his part, that the length of the sentence "upset" Mr. Sue, and that he understood that Mr. Sue wanted counsel "to take action on the sentence[,]" but couldn't recall any specific mention of an appeal. *Id*. at 1513–14. In addition, Mr. Levinson explained that he and his partner, Ms. Kaufman, made the strategic decision to pursue a reduction of sentence on the inconsistency issue, because they reasoned that their chances for relief were greater through that vehicle than a direct appeal or the pursuit—at the outset—of the potential *Apprendi* issue. *See id.* at 1518–20 (testifying that counsel decided not to pursue an *Apprendi* challenge, out of concern that the sentencing court could have gotten "to the same place in terms of the number of years" even in the absence of the "aggravation," and because they had some concerns that resentencing *could have* resulted in a greater term of imprisonment), 1523 (explaining counsel's belief that they had "a very good substantive" Rule 35(b) "motion for reduction of sentence"), 1527–29 (reiterating the same belief and the perceived risks of pursuing a different path for relief). More specifically, Mr.

9

Levinson stated that they "made a judgment call" that their motion constituted an "effective avenue for relief for Mr. Sue," and they believed that, by reserving a sentencing challenge on illegality grounds under Rule 35(a) (or perhaps Rule 35(c)), they "had constructed a mechanism to get two shots at the [sentence] reduction apple." *Id.* at 1527; *see also id.* at 1521 (making essentially the same assertion about "tak[ing] another bite at the apple").

Ms. Kaufman then testified on her own recollections of Mr. Sue's sentencing. *See id.* at 1533–64. At that time, Ms. Kaufman acknowledged that she discussed post-conviction motions with Mr. Sue on many occasions, but denied recalling "a specific conversation" on the issue of an "appeal." *Id.* at 1544–45. Beyond that, Ms. Kaufman explained that the concept of an "appeal" means different things to non-lawyers, and claimed that she *generally* viewed vague expressions along those lines to mean the filing of a Rule 35(b) motion—which she did.[5] *Id.* at 1545–46. Nevertheless, she emphasized that she would have "immediately referred" any client to an appellate lawyer, if he or she said "I want to do a direct appeal on my illegal sentence." *Id.* at 1559.

---

[5] Like Mr. Levinson, Ms. Kaufman emphasized that she poured over the plea agreement with Mr. Sue, and stated that her general practice would have been to discuss at length *any* issue touched upon by the plea agreement, whether related to an appeal or otherwise. *See* Pet'r's App., CD of State Court Transcripts, at 1555–57. She could not, however, recall whether she actually counseled Mr. Sue on the appellate process and noted that it was unlikely that she specifically advised him that he had forty-five days in which to file an appeal. *See id.*

10

Finally, Mr. Castle testified regarding his *brief* post-sentencing representation of Mr. Sue. *See id.* at 1565–84. During his testimony, Mr. Castle detailed the advice he provided on potentially withdrawing the guilty plea (post-sentencing), *see id.* at 1568–70, and on pursuing potential post-conviction relief, *see id.* at 1572–73. In connection with that process, Mr. Castle explained that he reviewed the "enormous" defense file, determined that prior counsel had been "extremely thorough to the point of almost being overdone," and filed a motion to correct a sentence in order to preserve the "aggravation" issue for appellate review. *Id.* at 1572–77. Nevertheless, he stated that he did not complete any further review (of the potential *Apprendi* issue or otherwise), because Mr. Sue (and his family) asked him to withdraw. *See id.* at 1575, 1579–81.

Following the testimony, the state court denied Mr. Sue's motion, and made two critical findings. *See id.* at 1621–25. First, the state court dispensed with the notion that Mr. Levinson, Ms. Kaufman, or Mr. Castle had provided ineffective assistance. More specifically, the state court reasoned that trial counsel did not act ineffectively in failing to file a notice of appeal, because

> an appeal may mean many things to many different defendants. Appeal could mean [a motion under] 35(a), (b) or (c). Appeal could mean a direct appeal. Appeal could mean a writ of habeas corpus. Appeal means a second call to many defendants and to many lay people as well. Counsel, all three counsel, but mostly Kaufman and Levinson because they had more opportunity to, sat back, analyzed this, analyzed what would be most effective, analyzed the option of using a 35(b), decided that a direct appeal would not be effective, discussed this matter numerous

11

> times . . . discussed the possibility of appeal possibly resulting in a longer sentence, discussed many different scenarios, many different outcomes, and . . . specifically . . . discussed issues with Mr. Sue, they didn't ignore Mr. Sue, they didn't ignore his calls.

*Id*. at 1621–22. The state court then addressed Mr. Sue's testimony that he wanted an "appeal" and Ms. Kaufman's contrary testimony, and determined that it need not adopt any particular version of events,

> because, again, as Ms. Kaufman said, an appeal can mean a lot of things. And there was a lot -- well, the emotional level in the courtroom with counsel and with the defendant was very high. But in any case, I have no doubt in my mind that both Kaufman and Levinson discussed this matter with each other, discussed what the best strategy would be, discussed this matter, and did return phone calls, and did speak to both the parents and to the defendant and to, in fact, the two brothers as she testified.

*Id*. at 1622. In other words, the state court credited Ms. Kaufman's testimony and its own experiences and observations, and found that counsel did not act ineffectively, because they "discussed" and "chose[]" "avenues of appeal in the general sense," and because "nothing they did" prejudiced Mr. Sue. *Id*. at 1622–23. Stated more succinctly, the state court concluded that, "although they didn't file a notice of intent to file an appeal within 45 days," counsel made "a competent, strategic decision. And that[] [was] why it didn't happen." *Id*. at 1623.

Turning then to the "more difficult" issue of whether *Sue II* qualified as a successive request for relief, the state court reasoned that Mr. Sue "fully and finally resolved" the issues presented in *Sue II* in his earlier *Sue I* matter. *Id*. at

12

1625. As a result, the state court concluded that the *Sue II* motion "must be dismissed" as successive.[6] *Id.* On appeal, the CCA affirmed, finding that *Sue I* and *Sue II* raised "essentially . . . the same claim and [sought] the same relief – reduction of his sentence because it was illegally aggravated under *Apprendi* and *Blakely*." Pet'r's App., Vol. I, at 42 (Order, dated Mar. 11, 2010) (citations omitted). For that reason, the CCA disposed of the appeal on successiveness grounds, and did not reach the merits of Mr. Sue's IAC claims.[7] *See id.* at 43 ("Because we have concluded that the trial court properly denied [Mr. Sue's] motion as successive, we need not address [his] claims of ineffective assistance of counsel.").

## D

Following the affirmance, on October 8, 2010, Mr. Sue filed another pro se motion for post-conviction relief under Colorado Rule of Criminal Procedure 35(c), contending that his post-conviction attorneys "failed him" by improperly

---

[6]     Based on this conclusion, Mr. Sue takes the view, as detailed below, that the state court resolved the *Sue II* motion on procedural grounds, without reaching the merits of Mr. Sue's IAC claim. *See* Pet'r's Br. at 8. We reject that contention for the reasons set forth *infra* note 10.

[7]     The Colorado Supreme Court then denied Mr. Sue's petition for a writ of certiorari on October 18, 2010. *See* Pet'r's App., CD of State Court Pleadings, at 1215 (Order, dated Oct. 18, 2010).

13

litigating the effectiveness of trial counsel ("*Sue III*").[8]  Pet'r's App., CD of State

Court Pleadings, at 1151–67 (Motion for Relief under Rule 35(c), filed Oct. 8,

2010).  In opposition, the State argued that Mr. Sue's third Rule 35(c) must be

denied as successive to *Sue I* and *Sue II*.  *See id*. at 1240–41.  On June 8, 2011,

the state court denied Mr. Sue's *Sue III* motion on the grounds that his IAC

claims (against trial counsel and/or post-conviction counsel) lacked merit,

principally because Mr. Sue voluntarily "entered a plea of guilty" and received a

sentence "within the stipulated range."  Pet'r's App., Vol. I, at 44–45 (Order,

dated June 8, 2011).

On appeal, the CCA evaluated Mr. Sue's IAC claims under the two-prong

test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) (and interpreted in

*Flores-Ortega*), and noted the "controverted testimony" concerning whether Mr.

Sue "specifically instructed his [trial] counsel to file an appeal on his behalf."

*See id*. at 52–54 (Order, dated Jan. 16, 2014).  Nevertheless, because the factual

record supported the finding that trial counsel consulted with Mr. Sue on his

"options," and because Mr. Sue "never asked about the status of any appeal

---

[8]     Given the pendency (at that time) of his certiorari petition with the
Colorado Supreme Court, Mr. Sue simultaneously filed a request to hold his
motion in abeyance and for the appointment of counsel.  *See* Pet'r's App., CD of
State Court Pleadings, at 1213–14 (Request to Hold Mot. in Abeyance & for
Appointment of Counsel, filed Oct. 8, 2010).  On December 9, 2010, the state
court appointed Mr. Noble to represent Mr. Sue (again) in his post-conviction
proceedings.  *See id*. at 1234 (Order, filed Dec. 9, 2010).

following the sentencing hearing," the court found no ineffectiveness in trial counsel's decision to pursue a post-conviction motion rather than an appeal. *Id.* at 54–57. The *Sue III* court therefore concluded that Mr. Sue "necessarily could not succeed" on his claim that post-conviction counsel rendered ineffective assistance in failing to pursue IAC claims against trial counsel, and affirmed the trial court's denial of Mr. Sue's motion. *Id.* at 57. The Supreme Court of Colorado then denied his petition for writ of certiorari on September 8, 2014. *See* Pet'r's App., Vol. 1, at 405 (Order, dated Sept. 8, 2014).

**E**

On May 19, 2015, Mr. Sue filed the underlying § 2254 petition in federal district court arguing, as he did in the prior state court proceedings, that his trial counsel violated his Sixth Amendment right to effective assistance of counsel, by failing to file a direct appeal. *See id.* at 3–15 (Appl. for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed May 19, 2015). On July 29, 2015, the State filed an initial response; significantly, it stated that it did "not assert that [Mr. Sue's] claim [was] unexhausted, procedurally defaulted, or barred by the applicable statute of limitations." *Id.* at 63 (Respondents' Initial Response, filed July 29, 2015).

Following the parties' merits briefing, the district court denied the petition, as well as a motion for reconsideration filed by Mr. Sue and his request for the

15

issuance of a COA.[9]  *See* Pet'r's App., Vol. II, at 372–74 (Order for Dismissal,

dated Jan. 25, 2016), 388 (Order Denying Mot. to Vacate & Reconsider Order for

Dismissal and J., filed Mar. 4, 2016), 389 (Order Denying Mot. to Alter or Amend

Findings, dated Mar. 4, 2016). This timely appeal followed.  *See id.* at 390

(Notice of Appeal, filed Mar. 31, 2016).

## II

Mr. Sue may not appeal from the district court's denial of his § 2254

petition unless we grant a COA.  *See* 28 U.S.C. § 2253(c)(1)(A); *Davis v.

Roberts*, 425 F.3d 830, 833 (10th Cir. 2005); *see also Gonzalez v. Thaler*, --- U.S.

----, 132 S. Ct. 641, 649 (2012) (citing the "'clear' jurisdictional language . . . in

---

[9]  The district court denied the petition due to Mr. Sue's failure "to show *prejudice* from ineffective assistance of counsel by failing to get his approval for not filing a direct appeal."  Pet'r's App., Vol. 2, at 374 (Order, filed Jan. 25, 2016) (emphasis added).  In other words, while the state court addressed only the first *Strickland* prong (i.e., trial counsel's performance), the district court addressed only the second *Strickland* prong (i.e., prejudice).  Suffice it to say, we decline to follow the particulars of the district court's analysis here.  It is the district court's ultimate resolution of Mr. Sue's habeas petition that is our focus.  *See Whitmore v. Parker*, 484 F. App'x 227, 236 (10th Cir. 2012) ("adopting a different rationale, [but] agree[ing] with the district court's ultimate rejection of [the habeas] claim").  And, as explicated *infra*, we deny Mr. Sue a COA because we conclude that reasonable jurists could not debate that ultimate resolution.  *See Self v. Milyard*, 522 F. App'x 435, 437 n.2 (10th Cir. 2013) (noting that we can deny a COA "so long as we are confident in the correctness of the district court's *ultimate resolution* of his habeas claims—and we are"); *see also Brown v. Roberts*, 501 F. App'x. 825, 830 (10th Cir. 2012) ("While we arrive at that conclusion through a somewhat different path than that employed by the district court, we find that reasonable jurists could not disagree with the district court's ultimate *resolution* in dismissing the petition.").

§ 2253(c)(1)"). In order to obtain a COA, Mr. Sue must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In other words, he must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

In addition, because Mr. Sue filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of AEDPA must "be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004); *see also Smith v. Duckworth*, 824 F.3d 1233, 1240–41 (10th Cir. 2016); *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). More specifically, where the state court adjudicated the merits of the claim, as here,[10]

_____

[10]     Mr. Sue argues that, because the state courts denied his later post-conviction motions—at least in part—as improper successive requests for relief, there has been no adjudication on the merits, and thus no basis to subject the state court decisions to AEDPA deference. *See, e.g.*, Pet'r's Br. at 14–15 (arguing that "the state courts did not decide the merits of his claim"). Looking exclusively to *Sue II*, Mr. Sue specifically submits that the state courts resolved his claims (and, by derivation, the issues raised here) on *solely* procedural grounds, because the CCA affirmed the state trial court's successive finding, and declined to reach his IAC claims. *See id.* at 23–26. Mr. Sue's position, however, effectively asks us to brush aside the *later* decision by the CCA in *Sue III*, on the basis that *Sue III*

(continued...)

17

an applicant is not entitled to relief unless he can demonstrate that "the state court's resolution of his claims was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Smith*, 824 F.3d at 1241 (quoting *Hooks*, 689 F.3d at 1163); *see also* 28 U.S.C. § 2254(d)(1), (2) (source of the second-level internal quotation). In applying that rubric, we limit our review "to the record . . . before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and afford state-court factual findings a presumption of correctness rebuttable only by "clear and convincing evidence," *Hooks*, 689 F.3d at 1163 (quoting 28 U.S.C. § 2254(e)(1)).

---

(...continued)
concerned the ineffective assistance of post-conviction counsel, rather than trial counsel. *See id.* at 10 (arguing that *Sue III* "is irrelevant in this habeas proceeding"). Nevertheless, in *Sue III*, the CCA rightly deemed the two iterations of Mr. Sue's IAC claims inextricably linked, because the claims against post-conviction counsel rested upon the manner in which they pursued the IAC claims against trial counsel. *See generally* Pet'r's App., Vol. 1, at 46–57. Indeed, evaluating *Strickland* and the evidentiary record on trial counsel's performance, the CCA *specifically concluded* that *trial counsel* had not been ineffective—and therefore determined that Mr. Sue's IAC claims against post-conviction counsel "necessarily" failed. *Id.* at 57. In other words, the CCA squarely addressed the merits of the IAC claims that Mr. Sue raises in this federal proceeding, and we must apply AEDPA deference to that analysis. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 746 (10th Cir. 2016) (concluding that "when a state court analyzes appellate counsel ineffectiveness as an excuse for procedural default, we must afford AEDPA deference to that analysis").

18

In other words, AEDPA erects a formidable and "highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

## III

In his habeas petition, Mr. Sue advances two interconnected positions. First, he argues that his trial counsel plainly violated his Sixth Amendment right to effective assistance of counsel, as interpreted in *Flores-Ortega*, by failing to file an appeal or to adequately advise him of his appellate options, despite his "demonstrated . . . interest in appealing." Pet'r's Br. at 14–22. In the alternative, he argues that the state court's disposition of his IAC claim ran contrary to, or involved an unreasonable application of, *Flores-Ortega*, and rested upon an unreasonable determination of the facts. *See id.* at 26–33.

In view of the highly deferential standard for evaluating state-court dispositions, we deny his request for a COA and dismiss this matter.

## A

We review Mr. Sue's claim of ineffective assistance of counsel under the well-known rubric of *Strickland*. *See Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011). In other words, Mr. Sue "must show both that his counsel's performance 'fell below an objective standard of reasonableness' and that 'the

19

deficient performance prejudiced the defense.'" *Id.* at 1167 (emphasis omitted) (quoting *Strickland*, 466 U.S. at 687–88). "These two prongs may be addressed in any order, [but the] failure to satisfy either is dispositive." *Hooks*, 689 F.3d at 1186.

In this case, we focus—as the state court did—on the first *Strickland* prong—*viz.*, the performance inquiry. Our review of counsel's performance under the first prong of *Strickland* is a "highly deferential" one, *Hooks*, 689 F.3d at 1186 (citations omitted), and "we begin with a strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Ryder*, 810 F.3d at 741 (quoting *Strickland*, 466 U.S. at 690). Surmounting this obstacle proves, in any procedural setting, "not an 'easy task.'" *Hooks*, 689 F.3d at 1187 (citations omitted). A state prisoner in the § 2254 context, however, faces an even greater challenge, because our review becomes "doubly deferential." *Byrd*, 645 F.3d at 1168 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). More specifically, "when assessing a state prisoner's ineffective-assistance-of-counsel claim[] on habeas review, '[w]e defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client.'" *Hooks*, 689 F.3d at 1187 (second alteration in original) (citations omitted). In other words, the question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[,]"

20

not whether "counsel's actions were reasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Given this heavily deferential standard, we discern nothing unreasonable in the state court's *Strickland* determination.

In this case, the CCA in *Sue III* dispensed with Mr. Sue's ineffectiveness challenge on the grounds that *Flores-Ortega* concerned primarily, if not exclusively, a situation in which a lawyer "disregards *a specific instruction* from the defendant to file an appeal," and because there existed some record support for the notion that counsel "consulted with [Mr. Sue] and his family about their [various] options" and that Mr. Sue never inquired into "the status of any appeal following the sentencing hearing." Pet'r's App., Vol. 1, at 53–56. In finding that trial counsel did not perform deficiently, the CCA made three critical factual determinations. *First*, it credited testimony of Mr. Sue's trial lawyers "that they had no recollection of an instruction to file a direct appeal, and that had [Mr. Sue] made such a request, they would have engaged separate appellate counsel for him." *Id.* at 54. In light of this evidence, the *Sue III* court reasoned that Mr. Sue uttered at most an *unclear* request for an appeal. *See id.* *Second*, it found "record support" for the conclusion that trial counsel did indeed consult with Mr. Sue and his family about his post-conviction options. *Id.* at 54–55. *Finally*, it determined that trial counsel made a reasoned strategic decision in pursuing a motion for reduction of sentence, in lieu of other available post-conviction options—and indeed, found "no basis to conclude that [trial] counsel's decision to proceed with

21

a Crim. P. 35(b) motion amounted to ineffective assistance of counsel." *Id*. at 54–57.

In reviewing the state court's ultimate determination—*viz.*, its conclusion that trial counsel did not render ineffective assistance—we *must* credit these factual findings, unless rebutted by *clear and convincing evidence*. *See Hooks*, 689 F.3d at 1164. Mr. Sue, however, has made no such showing. Rather, he states his disagreement with these factual findings, but offers virtually *no* evidence to substantiate his disagreement, much less any *clear and convincing* evidence. *See, e.g.*, Pet'r's Br. at 31–33 (challenging the state court's factual findings, but pointing to virtually no evidence to buttress these challenges). Mr. Sue points only to his own testimony, and argues little more than that the state court made "unanchored" factual findings. *Id*. at 31. This line of argument alone, however, falls far short of rebutting the presumptive correctness of the state court's factual findings. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Smith*, 824 F.3d at 1238 n.2 (concluding that petitioner failed to rebut presumption favoring state court's factual findings); *Byrns v. State of Utah*, 166 F.3d 346 (10th Cir. 1998) (unpublished table decision) (rejecting petitioner's factual narrative, because he presented "no evidence to rebut the state court's factual findings").

In view of these *unrebutted* facts, we can find nothing *unreasonable* in the CCA's conclusion that *Flores-Ortega* does not avail Mr. Sue. In *Flores-Ortega*, the Supreme Court applied the *Strickland* rubric to a case involving counsel's failure to file a notice of appeal, and determined that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a . . . professionally unreasonable" manner—i.e., renders deficient performance. 528 U.S. at 477. Nevertheless, the Supreme Court recognized that the deficiency inquiry becomes somewhat more nuanced where, as the state court found here, "the defendant has not clearly conveyed his wishes one way or the other." *Id*.

In addressing that issue, the Court determined that two paradigmatic scenarios emerge. *See id*. at 478. If, on the one hand, "counsel has consulted with the defendant, the question of deficient performance" becomes "easily answered: [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. (citation omitted). If, however, there has been no consultation, "a constitutionally imposed duty to consult with the defendant about an appeal" arises in the face of "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appeal." *Id*. at 480.

23

In applying this decision to Mr. Sue's IAC claim, the CCA concluded—as a factual matter—that the record reflected no clear instruction to file an appeal and credibly suggested that trial counsel did indeed consult with Mr. Sue. *See* R., Vol. I, at 54–55. In other words, the CCA found no factual basis—whether through the failure of Mr. Sue's trial lawyers to file an appeal *or* their consultation with Mr. Sue—to conclude that his trial lawyers' conduct ran afoul of *Flores-Ortega*'s principles. We see nothing *unreasonable* in the CCA's interpretation and application of *Flores-Ortega*, particularly given Mr. Sue's failure to rebut the state court's underlying factual findings.

Against that backdrop, we conclude that the state court reasonably concluded that trial counsel satisfied *Strickland*'s deferential standard. Consequently, reasonable jurists could not debate the correctness of the district court's resolution of Mr. Sue's § 2254 petition or conclude that there were any issues raised therein that deserved encouragement to proceed further.

**IV**

For the foregoing reasons, we deny Mr. Sue's request for a COA and dismiss this matter.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

24