FILED
United States Court of Appeals
Tenth Circuit

December 6, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TEROME LEVI PORTER,

        Petitioner - Appellant,

v.

JOE M. ALLBAUGH,

        Respondent - Appellee.

Nos. 16-6211 & 16-6246
(D.C. Nos. 5:15-CV-01165-W and
5:14-CV-01007-W)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **HOLMES**, and **MORITZ**, Circuit Judges.

In these related appeals, pro se[1] Petitioner-Appellant Terome Levi Porter,

an Oklahoma state prisoner, seeks certificates of appealability ("COAs") and

permission to proceed *in forma pauperis*, in order to challenge the district court's

---

[*]    This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]    Because Mr. Porter appears pro se, we afford his filings liberal construction, but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

denial of his habeas petitions under 28 U.S.C. § 2254 relative to two separate state court convictions.[2]

In his first habeas petition, *Porter v. Allbaugh*, No. 16-6211 ("*Porter I*"), Mr. Porter argues (1) that the Oklahoma state court violated his due-process rights by conducting accelerated sentencing hearings, and (2) that he received ineffective assistance of counsel during his guilty plea and sentencing hearings. In his second habeas petition, *Porter v. Allbaugh*, No. 16-6246 ("*Porter II*"), Mr. Porter contends that the Oklahoma state court violated his due-process rights by (1) misinterpreting the Oklahoma statute under which he had been charged, and by (2) improperly instructing the jury on the applicable sentencing range. The district court denied Mr. Porter's petitions (and declined to issue COAs), finding the claims raised in *Porter I* untimely and the claims asserted in *Porter II* meritless.

Exercising jurisdiction under 28 U.S.C. § 1291, we **DENY** Mr. Porter's request for COAs, **DENY** his applications to proceed *in forma pauperis*, and **DISMISS** these matters.

**I**

Mr. Porter's petitions concern, as explained *infra*, two separate criminal convictions, and we discuss the background of each matter in turn.

---

[2] We have consolidated these two separate appeals on our own motion. *See* Fed. R. App. P. 3(b)(2).

2

**A**

In April 2008, Mr. Porter pleaded guilty to possession of a controlled substance with intent to distribute in the District Court of Kay County, Oklahoma. The state trial court deferred Mr. Porter's sentencing for four years, but ultimately granted the State of Oklahoma's ("State") motion to accelerate judgment, and sentenced Mr. Porter to twenty-five years' imprisonment on May 3, 2012. Following sentencing, Mr. Porter moved to withdraw his guilty plea. The state trial court, however, denied the motion on May 29, 2012, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the acceleration of the deferred judgment, Mr. Porter's sentence, and the denial of his motion to withdraw on October 29, 2013.

Following his direct appeal to the OCCA, Mr. Porter filed an application for post-conviction relief in the Oklahoma state trial court on September 22, 2014. On November 3, 2014, however, the state court denied his application because it raised issues that Mr. Porter previously had failed to pursue on direct appeal—and, therefore, had waived. The OCCA then declined jurisdiction over Mr. Porter's appeal because he failed to perfect the appeal within the thirty-day window that the OCCA's procedural rules specify. Nevertheless, the OCCA stated that Mr. Porter *could* make a request with the trial court for leave to file an untimely appeal. On February 4, 2015, Mr. Porter did so but the state trial court

denied the application to file an appeal out of time on February 6, 2015, and Mr. Porter did not appeal that denial to the OCCA.

Instead, on October 15, 2015, he filed his *Porter I* habeas petition, arguing that certain aspects of his plea and accelerated sentencing hearings violated his constitutional rights.  On May 26, 2016, however, the magistrate judge to whom the *Porter I* petition had been referred recommended that the petition be dismissed as time-barred.  More specifically, the magistrate judge concluded that Mr. Porter's conviction became final on January 27, 2014 (ninety days after the OCCA affirmed his conviction and the accelerated proceedings), which meant that Mr. Porter's habeas petition had to be filed—absent tolling—by no later than January 28, 2015.

Turning to tolling, the magistrate judge then found Mr. Porter was entitled to 106 total days of statutory tolling, consisting of (1) the forty-three days his post-conviction petition remained pending in the state trial court and an additional thirty days until that decision became final, and (2) the three days his application to file an appeal out of time remained pending in the state trial court, together with an additional thirty days before that decision became final.[3]  Given those conclusions, the magistrate judge determined that the limitations period for Mr.

---

[3]    Because the OCCA declined jurisdiction over Mr. Porter's appeal on timeliness grounds, the magistrate judge found that his untimely appeal did not statutorily toll the federal limitations period.  Similarly, the magistrate judge found no basis to equitably toll the limitations period.

4

Porter's habeas petition expired on May 14, 2015, and recommended that his petition—filed October 15, 2015—be dismissed on timeliness grounds.

After reviewing Mr. Porter's objections to the magistrate judge's recommendation, the district judge adopted the recommendation and dismissed Mr. Porter's petition with prejudice.[4]  Following Mr. Porter's timely filing of a notice of appeal, the district court declined to issue a COA, denied his application to proceed *in forma pauperis* on appeal, and stated that the appeal was not taken in good faith.

**B**

In December 2011, the State charged Mr. Porter with possession of a cell phone in jail, following a prior felony conviction, in violation of Okla. Stat. Ann. tit. 57, § 21(B) ("Section 21(B)").[5]  Over Mr. Porter's objection, the Oklahoma state court instructed the jury that the possession charge required proof beyond a reasonable doubt that an inmate knowingly, willfully, and without authority had possession of any cellular phone within the secure confines of the jail.  In

---

[4]　In adopting *every* aspect of the magistrate judge's recommendation, the district judge identified May *24*, 2015 (rather than May *14*, 2015), as the filing deadline.  Nevertheless, because the district court accepted the magistrate judge's recommendation in full, context suggests that the date constitutes a typographical error.  Apart from that circumstance, the *Porter I* petition remains untimely even with the benefit of the later date.

[5]　In advance of trial, the parties stipulated to Mr. Porter's prior felony conviction.

5

addition, the state court advised the jury that the charge carried "a term of imprisonment [of] not less than ten (10) years or up to Life in the penitentiary."[6] *Porter II* R. at 77 (Instr. No. 15, filed Jan. 9, 2015). The jury found Mr. Porter guilty and fixed punishment at ten years' imprisonment.

Mr. Porter appealed the conviction, arguing that he should have been charged and convicted under Okla. Stat. Ann. tit. 57, § 21(E) ("Section 21(E)"); it applies when a "person" possesses a cellular phone in jail, as opposed to Section 21(B), which applies to an "inmate['s]" possession of such a device. Notably, Section 21(E) carries a term of imprisonment *not exceeding* two years, while Section 21(B) provides for an imprisonment range of *not less* than five years nor more than twenty years *and* triggers the sentence-enhancement provisions of Okla. Stat. Ann. tit. 21, § 51.1(A) ("Section 51.1(A)"). The OCCA, however, affirmed the sentence, concluding that the state trial court correctly interpreted the relevant statutes and therefore did not violate Mr. Porter's due-process or jury-sentencing rights.

In the aftermath of the OCCA's affirmance, Mr. Porter filed his *Porter II* habeas petition, reasserting his position that the state court proceedings violated

---

[6]     Standing alone, Section 21(B) provides for a term of imprisonment "of not less than five (5) years nor more than twenty (20) years in the custody of the Department of Corrections." Okla. Stat. Ann. tit. 57, § 21(B). Pursuant to Section 51.1(A), however, Mr. Porter's stipulated prior felony conviction resulted in an enhanced sentencing range of ten years to life imprisonment. *See* Okla. Stat. Ann. tit. 21, § 51.1(A).

his constitutional rights by charging and convicting him under Section 21(B) rather than Section 21(E). Given the OCCA's resolution of this claim on the merits and the substantial deference owed to the state court's interpretation of state law, the magistrate judge to whom the *Porter II* petition had been referred recommended that the petition be denied.

After reviewing Mr. Porter's objections to the magistrate judge's recommendation, the district judge adopted the recommendation and denied Mr. Porter's petition and his subsequent motion for reconsideration. Following Mr. Porter's timely filing of a notice of appeal, the district court declined to issue a COA, denied his application to proceed *in forma pauperis* on appeal, and stated that his appeal was not taken in good faith.

## II

Because the district court denied Mr. Porter's requests for COAs, he may not appeal the district court's decisions unless we grant COAs. *See* 28 U.S.C. § 2253(c)(1)(A); *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005); *see also Gonzalez v. Thaler*, --- U.S. ----, 132 S. Ct. 641, 649 (2012) (citing the "'clear' jurisdictional language . . . in § 2253(c)(1)"). In order to obtain a COA, Mr. Porter must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "This standard requires 'a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

7

manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Coppage v. McKune*, 534 F.3d 1279, 1281 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

When a federal district court denies a § 2254 petition on procedural grounds—as happened in *Porter I*—the applicant faces a "double hurdle." *Id.* "Not only must the applicant make a substantial showing of the denial of a constitutional right, but he must also show 'that jurists of reason would find it debatable . . . whether the district court'" reached a correct procedural ruling. *Id.* (quoting *Slack*, 529 U.S. at 484). In applying that rubric, we may "dispose of the application" by resolving whichever issue (i.e., substantive merits or procedural) presents the "more apparent" answer. *Slack*, 529 U.S. at 485.

Where the state court adjudicated the merits of the claim—as happened in *Porter II*—the "deferential treatment of state court decisions" under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "must be incorporated into our consideration of a habeas petitioner's request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004); *see Smith v. Duckworth*, 824 F.3d 1233, 1240 (10th Cir. 2016); *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). More specifically, we may not grant habeas relief unless the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in

8

light of the evidence presented in the State court proceeding.'" *Smith*, 824 F.3d at 1241 (quoting *Hooks*, 689 F.3d at 1163); *see also* 28 U.S.C. § 2254(d)(1), (2) (source of the second-level internal quotation). In other words, AEDPA erects a formidable and "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

### III

Mr. Porter seeks COAs to challenge the district court's denial of his *Porter I* and *Porter II* habeas petitions. We review each separate matter in turn, and for the reasons that follow, decline to issue a COA in either action.

### A

In requesting a COA regarding the district court's denial of his *Porter I* petition, Mr. Porter raises no specific challenge to the district court's disposition. Indeed, apart from retracing the chronology of the underlying proceedings, Mr. Porter makes *no* mention of the district court's calculation of AEDPA's one-year

9

limitations period (nor the conclusions relative to statutory and equitable tolling), nor does he explain how reasonable jurists could debate the correctness of the district court's decision. Rather, he focuses—exclusively—on the claimed constitutional infirmities in the underlying state court proceedings. This will not do. The plain inadequacy of Mr. Porter's appellate briefing would permit us to conclude that he waived any argument concerning the propriety of the district court's procedural disposition. *See United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir. 2003) (concluding that the appellant waived his claim on appeal by failing to "address [it] in either his application for a COA or his brief on appeal"); *see also Patterson v. Jones*, 419 F. App'x 857, 859 (10th Cir. 2011) (holding that the appellant "waived his claims on appeal," because he "fail[ed] to discuss the district court's resolution of any of his habeas claims, much less explain how reasonable jurists could debate the correctness of the court's decision"). And bereft of a viable procedural challenge to the district court's order, Mr. Porter could not possibly overcome the "double hurdle" required to secure a COA. *Coppage*, 534 F.3d at 1281.

Nevertheless, even if we reached—in our discretion—the merits of the district court's ruling, we would conclude that reasonable jurists could not debate the correctness of its dismissal. AEDPA's one-year limitations period for filing a § 2254 petition began to run when Mr. Porter's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking

10

such review." 28 U.S.C. § 2244(d)(1)(A). In other words, the filing deadline began to run on January 27, 2014, when the ninety-day deadline to file a certiorari petition following the OCCA's affirmance expired. The one-year limitations period then ran uninterrupted for 238 days until September 22, 2014, when Mr. Porter filed his *first* application for post-conviction relief. *See* 28 U.S.C. § 2244(d)(2) (providing that the pendency of a properly filed application for post-conviction relief tolls the one-year limitations period). After the Oklahoma state trial court denied his application on November 3, 2014, Mr. Porter had thirty days to seek review before the OCCA.[7] *See* Okla. Stat. Ann. tit. 22, ch. 18, app. R. 5.2(C)(2). After the expiration of that period, on December 4, 2014, the limitations clock began to run again, and it did so for an additional sixty-two days—until February 4, 2015—when Mr. Porter filed his *second* application for post-conviction relief. Following resolution of that application on February 6, 2016, and the expiration of the time in which to seek review before the OCCA, the limitations period began again on March 10, 2015, and ran another sixty-five days (for a total of 365 days) until May 14, 2015, at which point it expired. Mr.

---

[7] Because the OCCA deemed Mr. Porter's appeal of the trial court's denial of his application for post-conviction relief untimely (i.e., not "properly" filed) as a matter of state law, the district court correctly concluded that this appeal did not statutorily toll the federal limitations period. *See Loftis v. Chrisman*, 812 F.3d 1268, 1272 (10th Cir. 2016) (concluding that a post-conviction appeal deemed untimely by the OCCA "did not statutorily toll the federal limitations period"). Nevertheless, Mr. Porter receives the benefit of the thirty-day period in which "he could have *timely* filed" an appeal with the OCCA. *Jones v. Oklahoma*, 191 F. App'x 752, 754–55 (10th Cir. 2006) (emphasis added).

11

Porter, however, did not file his *Porter I* petition until October 15, 2015, almost five months *after* the expiration of the statutory limitations period. Mr. Porter's petition was therefore untimely, absent application of equitable tolling.

In order to receive the benefit of equitable tolling, an applicant *must show* "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). On this point, Mr. Porter mounts no challenge to the district court's rejection of equitable tolling, nor does he identify any circumstance (much less an *extraordinary* one) that impeded his timely pursuit of habeas relief. Accordingly, on this basis alone, we could eschew an equitable-tolling inquiry and deem any such tolling argument by Mr. Porter to be waived.

However, even if we gave Mr. Porter the benefit of the equitable-tolling arguments that he advanced before the district court—*viz.*, *general* difficulties in obtaining trial transcripts and in accessing the prison law library—we would conclude that reasonable jurists would not find debatable the district court's determination that Mr. Porter's general grievances fail to constitute *extraordinary* circumstances. *See, e.g.*, *Parker v. Jones*, 260 F. App'x 81, 85 (10th Cir. 2008) (holding that lack of access to legal materials or assistance and the law library was insufficient to justify equitable tolling of the limitations period); *United States v. Williams*, 219 F. App'x 778, 779 (10th Cir. 2007) (concluding that

12

difficulties in obtaining trial transcripts was insufficient to constitute extraordinary circumstances).  Consequently, Mr. Porter cannot satisfy the standard for equitable tolling.

For these reasons, reasonable jurists could not debate the correctness of the district court's dismissal of the *Porter I* petition on timeliness grounds.  We therefore **DENY** Mr. Porter's request for a COA on his *Porter I* petition and **DISMISS** the matter.

**B**

In requesting a COA regarding the district court's denial of his *Porter II* petition, Mr. Porter restates his position that the Oklahoma state courts violated his constitutional rights by misinterpreting and misapplying Section 21 and improperly instructing the jury on the applicable sentencing range.[8]

---

[8] In addition, Mr. Porter's raises a *factual* challenge to the district court's recitation of the events underlying the *Porter II* petition, because the district court ostensibly ignored a subtle typographical discrepancy in the Judgment entered by the clerk of the Oklahoma trial court.  *See* Aplt.'s Br. at 4. More specifically, Mr. Porter points to the fact that the Judgment erroneously reflects a conviction under Section 21(E), rather than Section 21(B).  *See id.*; *see also Porter II* R. at 95.  However, even if we disagreed with the particulars of the district court's factual recitation, that would not necessarily benefit Mr. Porter. Our focus here is on the district court's ultimate resolution of Mr. Porter's habeas petition.  *See Whitmore v. Parker*, 484 F. App'x 227, 236 (10th Cir. 2012) ("adopting a different rationale, [but] agree[ing] with the district court's ultimate rejection of [the habeas] claim"); *see also Sue v. Kline*, --- F. App'x ----, 2016 WL 5944984, at *6 n.9 (10th Cir. Oct. 13, 2016) (declining to follow "the particulars" of the district court's analysis, but agreeing with "the district court's ultimate resolution of [the] habeas petition").  More specifically, the substance of
(continued...)

More specifically, he argues—as a matter of law—that he should have been charged and convicted under the "any person" provision of Section 21(E),[9] rather than the "inmate" provision of Section 21(B).[10] Based on that premise, Mr. Porter

_____

[8](...continued)
his habeas petition relates to whether the rulings of the Oklahoma state court deprived him of his constitutional rights. Consequently, so long as reasonable jurists could not debate the district court's ultimate judgment on that constitutional question, the technical accuracy of the court's factual recitation of the events underlying *Porter II* is immaterial. And, as explicated *infra*, we conclude that there would be no such debate here; therefore, irrespective of any factual-history error by the district court, no COA should issue. *See Self v. Milyard*, 522 F. App'x 435, 437 n.2 (10th Cir. 2013) (noting that we can deny a COA "so long as we are confident in the correctness of the district court's *ultimate resolution* of his habeas claims"); *see also Brown v. Roberts*, 501 F. App'x. 825, 830 (10th Cir. 2012) ("While we arrive at that conclusion through a somewhat different path than that employed by the district court, we find that reasonable jurists could not disagree with the district court's ultimate *resolution* in dismissing the petition.").

[9] Section 21(E) provides that,

[a]ny *person* who knowingly, willfully and without authority brings into or has in his or her possession in any secure area of a jail or state penal institution or other secure place where prisoners are located any cellular phone or electronic device capable of sending or receiving any electronic communication *shall, upon conviction, be guilty of a felony punishable by imprisonment in the custody of the Department of Corrections for a term not exceeding two (2) years, or by a fine not exceeding Two Thousand Five Hundred Dollars ($2,500.00), or by both such fine and imprisonment.*

Okla. Stat. Ann. tit. 57, § 21(E) (emphases added).

[10] Section 21(B) provides that,

[i]f an *inmate* is found to be in possession of any item prohibited
(continued...)

14

submits that his sentence should have been no more than two years' imprisonment

(without the prior-conviction enhancement), and claims that the Oklahoma trial

court violated his due-process rights by erroneously advising the jury that his

offense would carry a term of imprisonment of between ten years and life.

During his direct appeal, however, the OCCA squarely addressed—and

rejected—this very position. Indeed, in interpreting Section 21, the OCCA

explained that,

> [d]espite Porter's argument to the contrary, because he *was* an
> "inmate" in possession of a cell phone, the sentencing provisions
> of [Section] 21(B), providing for a term of imprisonment of not
> less than five years nor more than twenty years, governed his
> sentence. Any other construction of [Section] 21 would lead to
> absurd results that certainly could not have been intended by the
> Legislature (i.e., the inmate sentencing provisions specified in
> [Section] 21(B) could never be applied, thereby rendering the
> language useless). When the sentencing range for an inmate in
> possession of a cell phone set out in [Section] 21(B) is enhanced
> under [Section] 51.1(A)(3) with Porter's prior felony conviction,
> the range of punishment for Porter's offense is ten years to life.

*Porter II* R. at 71–72 (emphasis added) (citations omitted). Given that

interpretation, the OCCA concluded that the Oklahoma trial court appropriately

construed the sentencing statutes, and found no violations in Mr. Porter's "due

---

[10](...continued)
> by this section, upon conviction, such inmate shall be guilty of
> a felony and *shall be punished by imprisonment for a term of not
> less than five (5) years nor more than twenty (20) years in the
> custody of the Department of Corrections*.

Okla. Stat. Ann. tit. 57, § 21(B) (emphases added).

process and jury sentencing rights." *Id.* at 72. More succinctly, the OCCA determined (1) that Section 21(B) governed Mr. Porter's offense, (2) that the Oklahoma trial court rightly advised the jury of the sentencing range for *that* offense, and (3) that the overall state trial court proceedings did not violate Mr. Porter's constitutional rights.

Mr. Porter's challenge to the OCCA's interpretation of Section 21 implicates two related doctrines. First, although Mr. Porter disputes the state court's interpretation, we *must* "accept the [state] court's construction of that State's statutes." *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *see also Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (explaining that "the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court"); *Hawkins v. Mullin*, 291 F.3d 658, 662 (10th Cir. 2002) ("Although [the petitioner] challenges the state court's interpretation of Oklahoma's first-degree felony murder statute, this court is bound by the state court's interpretation of its own law."). Second, and relatedly, "[w]e may set aside a state conviction on the basis of [an] erroneous jury instruction[]" *only* "when the 'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). On habeas review, however, the "allegedly incorrect" nature of an instruction "under state

16

law [provides no] basis for habeas relief." *Id.* (quoting *Estelle*, 502 U.S. at 71–72).

Application of those principles here leads us to conclude that reasonable jurists could not debate the correctness of the district court's denial of Mr. Porter's habeas petition. Importantly, the OCCA interpreted Oklahoma law and found no error in the application of Section 21(B) to Mr. Porter's offense, nor in the Oklahoma trial court's instruction on the applicable sentencing range. And, in reviewing Mr. Porter's challenge to this decision on habeas review, we must accept the OCCA's construction of Oklahoma statutes. As a result, Mr. Porter's challenge to the OCCA's interpretation fails to warrant habeas relief because Section 21(B), as interpreted by the Oklahoma state courts, plainly applies to his offense. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Similarly, to the extent Mr. Porter contends that the "erroneous" jury instruction violated his due-process and jury-sentencing rights, he cannot demonstrate that the OCCA's decision proved contrary to or a misapplication of clearly established Supreme Court law, because the Oklahoma trial court correctly advised the jury of the sentencing range applicable to Mr. Porter's Section 21(B) offense, and Mr. Porter received a sentence well within the statutory range. *See Parker*, 394 F.3d

17

at 1319 (rejecting a habeas claim involving allegedly erroneous jury instructions, because federal courts "must accept [the OCCA's] interpretation of state law"); *Schulze v. Addison*, 494 F. App'x 922, 926 (10th Cir. 2012) (same).

For these reasons, reasonable jurists could not debate the correctness of the district court's denial of the claims raised in the *Porter II* petition. We therefore **DENY** Mr. Porter's request for a COA on his *Porter II* petition and **DISMISS** the matter.

## IV

Finally, we address Mr. Porter's request to proceed *in forma pauperis* in his appeals. The district court denied Mr. Porter's requests for *in forma pauperis* status, finding that he did not press his appeals in good faith. Mr. Porter now renews his requests before this court, but because he has not shown "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (quoting *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991)), we **DENY** his applications to proceed *in forma pauperis* and direct him to make full and immediate payment of the outstanding appellate filing fees.

**V**

Based on the foregoing, we **DENY** Mr. Porter's request for COAs, **DENY** his applications to proceed *in forma pauperis*, and **DISMISS** these matters.

Entered for the Court


JEROME A. HOLMES
Circuit Judge