**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HENRY L. JACKSON,

       Petitioner - Appellant,

v.

STATE OF UTAH; SCOTT
CROWTHER, Warden at Utah State
Prison,

       Respondents - Appellees.

No. 18-4154
(D.C. No. 2:15-CV-00237-RJS)
(D. Utah)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.

Henry L. Jackson, a Utah state prisoner proceeding pro se,[1] seeks a

---

[*]      This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

     After examining the appellate record, we have determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* FED. R. APP. P. 34(a); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]      Because Mr. Jackson is proceeding pro se, we construe his filings liberally, but we may not construct arguments for him. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Lankford v. Wagner*, 853 F.3d 1119, 1121–22 (10th Cir. 2017).

certificate of appealability ("COA") to challenge the district court's denial of his application for a writ of habeas corpus filed under 28 U.S.C. § 2254. His application for a COA raises four claims: (A) an alleged Due Process Clause violation based on the destruction of evidence, (B) an alleged Equal Protection Clause violation based on the State's use of its peremptory strikes, (C) an alleged Sixth Amendment violation based on ineffective assistance of appellate counsel, and (D) an alleged Sixth Amendment violation based on ineffective assistance of trial counsel. Exercising jurisdiction under 28 U.S.C. § 1291, we **DENY** Mr. Jackson's application for a COA as to each claim and **DISMISS** this matter.

## I. BACKGROUND

### A. Factual Background

Mr. Jackson hit his estranged girlfriend "with his car, rolled back over her lower leg, and maneuvered the car so it appeared [that he] was going to hit her again." *State v. Jackson* ("*Jackson I*"), 243 P.3d 902, 906 (Utah Ct. App. 2010), *overruled on other grounds by State v. DeJesus*, 395 P.3d 111 (Utah 2017). Her son, who was nearby, tried to stop Mr. Jackson "by opening the front passenger door of [Mr. Jackson]'s car and trying to hit him." *Id.* Mr. Jackson cut the son with "a large knife" and stabbed him in the arm, chased the son as he fled, and then stabbed him in his back and chest. *Id.* At this point, the estranged girlfriend released a pit bull that she was holding on to. *Id.* Mr. Jackson stabbed the pit

2

bull. *Id.* Mr. Jackson then returned to the estranged girlfriend, picked her up by her shirt, dragged her toward his car, hit her with the back of his knife, and told her, "now talk to me bitch." *Id.* at 906–07. He then let her go and left the scene. *Id.* at 907. The estranged girlfriend's and her son's testimony concerning these events was corroborated by three eyewitnesses. *Id.*

## B.    State Procedural Background

The State charged Mr. Jackson with two counts of attempted aggravated murder, one count of cruelty to animals, and one count of assault. *Id.* "Prior to trial, [Mr. Jackson] moved to dismiss the case, claiming that the State had destroyed evidence by releasing his car to its lienholder, which promptly cleaned the car and offered it for sale before [Mr. Jackson] was able to examine it." *Id.* Mr. Jackson claimed that testing would have revealed canine blood in the car, demonstrating that the pit bull attacked him in his car and supporting a self-defense theory. *Id.* The state trial court denied the motion, and the case proceeded to trial. *Id.*

During voir dire, the prosecutor exercised a peremptory challenge on a prospective juror who "was the only member of a minority group on the panel." *Id.* Defense counsel challenged the strike under *Batson v. Kentucky*, 476 U.S. 79 (1986). *Id.* The State claimed that "it struck the prospective juror due to his hearing problem and because he seemed too young." *Id.* It "also pointed out the

3

unlikelihood that the stricken juror would have served in any event, due to his position within the jury pool as number forty-six." *Id.* The trial court denied the *Batson* challenge, "apparently" accepting the prosecutor's proffered nondiscriminatory justifications. *Id.*

At trial, Mr. Jackson sought to present a self-defense theory. *Id.* at 906 n.4. The trial court gave the jury certain instructions regarding this defense, though Mr. Jackson—as we discuss below—argues that they were insufficient. Mr. Jackson did not testify at trial himself "to avoid the introduction of his prior conviction for murder [of his first wife] as impeachment evidence," as the trial court had "rul[ed] that the evidence of his prior conviction would be admissible if he testified." *Jackson v. State* ("*Jackson II*"), 332 P.3d 398, 400 (Utah Ct. App. 2014). The jury, however, rejected the self-defense theory and convicted Mr. Jackson on all counts. *Jackson I*, 243 P.3d at 907. Mr. Jackson's conviction was affirmed on direct appeal by the Utah Court of Appeals, *id.* at 917, and the Utah Court of Appeals subsequently affirmed the denial of his state petition for post-conviction relief, *Jackson II*, 332 P.3d at 400.

## C. Federal Procedural Background

Mr. Jackson filed a timely federal habeas petition alleging five claims: (1) the State violated the Due Process Clause by destroying the evidence in his car, (2) the State violated the Equal Protection Clause through its use of

4

peremptory challenges, (3) the trial court erred by giving inadequate self-defense jury instructions, (4) his Sixth Amendment rights were violated through ineffective assistance of trial counsel, and (5) his Sixth Amendment rights were violated through ineffective assistance of appellate counsel. The district court denied Mr. Jackson's petition and, subsequently, his request for a COA. Mr. Jackson filed a timely application for a COA in this court.[2]

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA is a jurisdictional prerequisite to our merits review of a § 2254 appeal. *See* 28 U.S.C. § 2253(c)(1)(A); *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006). A COA may not issue unless an "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

---

[2] Following the entry of judgment, Mr. Jackson also filed a Rule 60(b) motion for relief from the judgment. The district court denied the Rule 60(b) motion after Mr. Jackson noticed his appeal to this court. Because Mr. Jackson never filed a new or amended notice of appeal with respect to the Rule 60(b) ruling, it is not properly before us. *See* FED. R. APP. P. 4(a)(4)(B)(ii). Moreover, the Rule 60(b) motion itself is not in the record on appeal, and Mr. Jackson does not raise the Rule 60(b) ruling as a basis for relief in his COA application. We thus do not address further the district court's resolution of that motion.

(2003); *accord Grant v. Royal*, 886 F.3d 874, 957–58 (10th Cir. 2018), *cert. denied sub nom. Grant v. Carpenter*, 139 S. Ct. 925 (2019).

In determining whether to grant a COA, we review the district court's "*ultimate resolution* of [a] claim—that is, its decision to deny it." *Pruitt v. Parker*, 388 F. App'x 841, 845 n.4 (10th Cir. 2010) (unpublished); *see United States v. Pinson*, 584 F.3d 972, 975–76 (10th Cir. 2009) (noting that the panel "cannot embrace the district court's reasoning," but nevertheless concluding that petitioner failed to meet the standard for issuance of a COA); *see also Sue v. Kline*, 662 F. App'x 604, 611 n.9 (10th Cir. 2016) (unpublished) ("Suffice it to say, we decline to follow the particulars of the district court's analysis here. It is the district court's ultimate resolution of [the prisoner's] habeas petition that is our focus." (collecting cases)). Thus, when reasonable jurists could not disagree with the district court's denial of a claim, we will deny a COA even if they could disagree with particulars of the district court's analysis.

Additionally, in the § 2254 context, our determination of whether reasonable jurists could disagree with the district court's resolution of the claim necessarily implicates the underlying AEDPA framework. *See Miller-El*, 537 U.S. at 336 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."); *accord Howell v. Trammell*, 728 F.3d 1202, 1225

(10th Cir. 2013).  Under AEDPA,

> a petitioner is entitled to federal habeas relief on a claim only if he can establish that the state court's adjudication of the claim on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013) (quoting 28 U.S.C.

§ 2254(d)(1)–(2)).  This standard is "highly deferential [to] state-court rulings

[and] demands that state-court decisions be given the benefit of the doubt."

*Grant*, 886 F.3d at 888 (alterations in original) (quoting *Woodford v. Visciotti*,

537 U.S. 19, 24 (2002) (per curiam)).

## III.  DISCUSSION

In this court, Mr. Jackson seeks a COA on four claims: (A) an alleged Due

Process Clause violation based on the destruction of evidence, (B) an alleged

Equal Protection Clause violation based on the State's use of its peremptory

strikes, (C) an alleged Sixth Amendment violation based on ineffective assistance

of appellate counsel, and (D) an alleged Sixth Amendment violation based on

ineffective assistance of trial counsel.[3]  In our following discussion of each of

---

[3]  Mr. Jackson concedes that "the district court [was] correct" in ruling that a fifth claim directly concerning the self-defense jury instructions was not properly exhausted, and he states that it was "a litigation mistake" to include this claim as a "standalone issue" in his federal habeas petition.  Aplt.'s COA Br. at 9–10.  He makes no argument for cause or prejudice and appears to concede that he is not entitled to a COA on this issue.

7

these claims, we (1) set out the specifics of the claim Mr. Jackson raised in state and district court, (2) describe the reasoning and conclusion provided by the district court, and (3) provide our own reasoning on the proper resolution of each claim. We conclude that reasonable jurists could not disagree with the district court's resolution of each of Mr. Jackson's constitutional claims, and we thus deny his application for a COA as to each claim.

## A.      Claim One: Destruction of Evidence Claim

Mr. Jackson argues that the State violated his due-process rights when it released his car to a lienholder before he had an opportunity to examine it for potentially exculpatory evidence. We hold that reasonable jurists could not disagree with the district court's resolution of this claim, and we thus deny Mr. Jackson's request for a COA on this issue.

### 1.      Claim Raised

Mr. Jackson raised his destruction of evidence claim on direct appeal. The Utah Court of Appeals rejected the claim on its merits. *Jackson I*, 243 P.3d at 910–11. It concluded that any evidence that could have been found in the car, e.g., the pit bull's blood, would not have significantly negated the other strong evidence of Mr. Jackson's guilt. *Id.* He thus was not prejudiced by the evidence's destruction. *Id.* Furthermore, the disposal of the car "suggest[ed] normal, routine cataloguing and disposition of evidence, not bad faith

8

destruction." *Id.* at 911. Mr. Jackson then raised this claim again in his habeas petition in the district court.

### 2.   District Court Analysis

The district court determined that the claim in Mr. Jackson's petition had not been raised before the Utah courts and thus was procedurally defaulted. The district court found that this default was unexcused and denied the claim without reaching the merits.

### 3.   Disposition

Although we address the merits of this claim instead of the district court's procedural ruling, we conclude that reasonable jurists could not disagree with the district court's ultimate *resolution* of this issue and thus deny a COA. *See Sue*, 662 F. App'x at 611 n.9 ("It is the district court's ultimate resolution of [the prisoner's] habeas petition that is our focus." (collecting cases)).

Mr. Jackson frames his destruction of evidence claim as arising under *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The Utah Court of Appeals concluded that the suppression of any evidence of the dog's blood in

9

the car would not have prejudiced Mr. Jackson, *Jackson I*, 243 P.3d at 910–11, reasoning: "Although [Mr. Jackson] may have been able to demonstrate that pit bull blood would have been found inside the car had the car not been returned to the lienholder and cleaned, any such blood within the car could have been attributed to having come from [Mr. Jackson]'s person after he stabbed the pit bull in the throat," *id.* at 911. Furthermore, "even if pit bull blood was in the car, the jury still could have concluded beyond a reasonable doubt that [Mr. Jackson] was guilty because the presence of pit bull blood in the car would not have significantly negated the other strong evidence supporting that [Mr. Jackson] became the aggressor when he left the car, that any danger was not immediate after the son retreated, and that [Mr. Jackson]'s use of force was objectively unreasonable." *Id.*

Mr. Jackson nowhere addresses or interacts with these rationales, let alone demonstrates how they constitute an unreasonable determination that he suffered no prejudice under *Brady*. Because Mr. Jackson fails to establish that the Utah Court of Appeals unreasonably applied *Brady*, he cannot succeed in his request for a COA.[4] Thus, we deny Mr. Jackson's request for a COA on this claim

_____

[4] Furthermore, Mr. Jackson's claim seemingly would have been more appropriately styled as a *Youngblood* claim because he alleges the *destruction* rather than the *suppression* of evidence. *See Arizona v. Youngblood*, 488 U.S. 51 (1988) (establishing the elements for a destruction-of-evidence claim). *Youngblood* requires a showing of bad faith destruction of evidence. *Id.* at 58; *accord Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003). Mr. Jackson

10

because reasonable jurists could not disagree that the district court's resolution of this issue was correct.

## B.      Claim Two: *Batson* Claim

Mr. Jackson claims the State violated *Batson* by using a peremptory strike on a minority juror.  We hold that reasonable jurists could not disagree with the district court's resolution of this claim, and we thus deny Mr. Jackson's request for a COA on this issue.

### 1.      Claim Raised

Under *Batson*, state courts use a three-step process for determining whether a constitutional violation has occurred:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Foster v. Chatman*, --- U.S. ----, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008)); *accord Flowers v. Mississippi*, --- U.S. ----, 139 S. Ct. 2228, 2241 (2019).

After the prosecution used a peremptory strike on a minority juror at Mr. Jackson's trial, his counsel raised a *Batson* challenge.  The trial court "determined

---

makes no mention of this requirement, nor does he cite *Youngblood*.  Therefore, we do not consider this matter further.

11

that [Mr. Jackson] had made a prima facie case of racial motivation." *Jackson I*, 243 P.3d at 915. The prosecution "then explained that it used a peremptory challenge on the prospective juror due to his young age and deafness in his right ear." *Id.* The prosecution additionally argued the juror would not have made it into the jury pool in any event because he was the forty-sixth juror (and this presumably meant he would not be selected). *Id.* at 907. "[T]he trial court apparently accepted these reasons as facially neutral and not given as a pretext" and rejected the claim. *Id.* at 915.

Mr. Jackson maintained his *Batson* challenge in his state direct appeal brief. The Utah Court of Appeals rejected the claim on the merits. It concluded that the prosecution had provided race-neutral reasons for striking the juror, including his hearing impairment and youth. *Id.* at 913–17. Mr. Jackson then raised this claim—at least in part, as we explain below—in his federal habeas petition in district court.

### 2. District Court Analysis

The federal district court concluded that this claim was exhausted and proceeded to address the merits of the claim. The court noted that the Utah Court of Appeals had "properly set forth" the *Batson* framework. R. at 601 (Mem. Decision & Order Den. Habeas Corpus Pet., filed Sept. 17, 2018). It then recounted how the Utah Court of Appeals had "thoroughly" applied that

12

framework, relying on the prosecutor's identification of race-neutral reasons for striking the juror, i.e., his youth and hearing impairment. *Id.* at 603. Finally, it concluded that the Utah Court of Appeals's decision was not contrary to or an unreasonable application of clearly established federal law.

### 3. Disposition

We discern two arguments in Mr. Jackson's application for a COA. First, Mr. Jackson argues that the prosecution's decision to strike the prospective juror based on his youth and hearing disability was "prohibited by law in the state of Utah." Aplt.'s COA Br. at 8. This argument centers on a footnote that was originally included in the Utah Court of Appeals's decision but was partially removed after the State moved for rehearing. *See Jackson I*, 243 P.3d at 906 n.1. The Utah Court of Appeals removed language stating that striking a juror based on age or disability would no longer be legal under a new state law. Based on the State's motion for rehearing, and the subsequent removal of this language, Mr. Jackson argues that the prosecution "has behaved improperly" and that this footnote provides "evidence to demonstrate that the [S]tate's explanation for its peremptory challenge was a pretext to disguise a racial motive." Aplt.'s COA Br. at 8–9.

We need not parse the iterations of this footnote or determine who is correct about state law because—among other reasons—Mr. Jackson did not make

13

this argument in district court, instead waiting to raise this aspect of his *Batson* challenge until he applied for a COA in this court. By failing to present this argument in district court, Mr. Jackson failed to preserve this component of his *Batson* challenge for our review. *See Grant*, 886 F.3d at 909 ("We conclude that Mr. Grant has not preserved these three arguments for appellate review because he failed to raise them in his habeas petition." (collecting cases)); *Stouffer v. Trammell*, 738 F.3d 1205, 1221 n.13 (10th Cir. 2013) ("We do not generally consider issues that were not raised before the district court as part of the habeas petition.").

Mr. Jackson also argues that "[t]he respondent has omitted a critical fact in petitioner's marshaled evidence (ie. [sic] he 'would not have made it into the jury pool either way because of his listing as no. 46')." Aplt.'s COA Br. at 8 (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 n.13 (1994)). This argument does mirror arguments made in state court and in district court, but it fails on the merits. Mr. Jackson's argument here references the prosecutor's statement to the trial court that the potential juror "would not have made it into the jury pool either way because of his listing as No. 46." R. at 196 (Tr. of Jury Trial, filed July 18, 2016). Interpreted charitably, Mr. Jackson argues that the state court contradicted *J.E.B.*'s statement that *Batson* harm arises whether or not a stricken juror actually would have been selected. *See J.E.B.*, 511 U.S. at 142 n.13 ("The

14

exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system."). The argument is that a state court applies *J.E.B.* unreasonably by rejecting a claim of discrimination because a discriminated-against juror would not have been seated.

But any such argument simply has no application to the facts before us. The Utah Court of Appeals held that *Batson* was not violated because the prosecution based its strike on the juror's hearing deficiency and age. *Jackson I*, 243 P.3d at 915. It thus determined that the strike was not discriminatory *without* relying on the fact that the juror would not have been seated, and so its decision is not contrary to or an unreasonable application of *J.E.B.* And while Mr. Jackson argues that "[t]*he respondent* has omitted [this] critical fact," Aplt.'s COA Br. at 8 (emphasis added), *the Utah Court of Appeals* acknowledged that the prosecutor had "pointed out the unlikelihood that the stricken juror would have served in any event, due to his position within the jury pool as number forty-six," *Jackson I*, 243 P.3d at 907. Notably, however, while the Utah Court of Appeals *acknowledged* this fact, it did not *rely* on it in concluding that the strike was not discriminatory. *Id.* at 907, 915. Mr. Jackson provides no further explanation about how *the respondent's* omission of this fact in its briefing could possibly result in a state court disposition that involved either a contradiction or misapplication of clearly established law.

Reasonable jurists could not disagree that the district court correctly determined that the Utah Court of Appeals's decision was not contrary to or an unreasonable application of either *Batson* or its Supreme Court progeny—in particular, *J.E.B.*  Thus, we deny Mr. Jackson's request for a COA on this claim.

## C.     Claim Three: Ineffective Assistance of Appellate Counsel Claim

Mr. Jackson argues that his *appellate* counsel was ineffective for failing to raise several instances of *trial* counsel's purported ineffective assistance. Construed liberally, *Lankford*, 853 F.3d at 1121–22, his arguments are that appellate counsel should have argued that trial counsel was ineffective for: failing to challenge jury instructions concerning self-defense; advising Mr. Jackson not to testify; not introducing certain evidence supporting Mr. Jackson's self-defense theory; and failing to investigate a prior altercation involving the victim and her son (that also purportedly would have supported the self-defense theory).  But, to the extent Mr. Jackson's arguments are not procedurally barred, he fails to demonstrate that the Utah Court of Appeals's decision was contrary to or an unreasonable application of clearly established law.  Thus, we deny Mr. Jackson's request for a COA on this issue.

### 1.     Claim Raised

Mr. Jackson's ineffective-assistance claims first appear in his post-conviction briefing before the Utah Court of Appeals.  There, he contended that

16

appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness in not challenging the self-defense jury instructions—which ostensibly did not clearly express the proper burden of proof with respect to issues bearing on his guilt, including his defense of self-defense. Citing Utah Supreme Court authority, which in turn relied on *Strickland v. Washington*, 466 U.S. 668 (1984), the Utah Court of Appeals rejected the claim because "the issue would not have resulted in reversal on direct appeal because the jury instructions correctly stated that the burden of proof beyond a reasonable doubt remained with the State." *Jackson II*, 332 P.3d at 400. Mr. Jackson then presented this claim in his habeas briefing in district court.

In the same state-court briefing, Mr. Jackson also claimed that appellate counsel was ineffective for failing to raise trial counsel's failure to object to the trial court's ruling that the State could introduce evidence of Mr. Jackson's prior bad acts if he testified. The Utah Court of Appeals framed this as an argument "that the trial court inappropriately prevented [Mr. Jackson] from testifying and that trial and appellate counsel were ineffective for failing to raise the issue." *Id.* It concluded that Mr. Jackson had a choice to refuse to testify (and avoid the introduction of his prior bad acts as impeachment evidence) or take the witness stand, and so the trial court's evidentiary ruling that such prior bad acts would be admissible if Mr. Jackson chose to testify did not deprive him of due process. *Id.*

17

And, because it rejected Mr. Jackson's argument on the merits, "neither trial nor appellate counsel were ineffective in failing to raise the issue." *Id.*

In his federal habeas petition, Mr. Jackson argued that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for advising Mr. Jackson not to testify in light of the trial court's prior-bad-acts ruling. The emphasis of this claim shifted somewhat from, on the one hand, trial counsel's failure to object to the court's allegedly erroneous prior-bad-acts ruling to, on the other, trial counsel's advice to Mr. Jackson not to testify based on that ruling. Construing Mr. Jackson's arguments liberally, however, *Lankford*, 853 F.3d at 1121–22, all of Mr. Jackson's appellate-ineffectiveness arguments concerning trial counsel's alleged responses to the prior-bad-acts ruling (i.e., whether failure to object or advising Mr. Jackson not to testify) are of one piece. Thus, the same claim that Mr. Jackson presented to the Utah Court of Appeals was presented in district court.

However, the aforementioned state-court briefing *cannot* be read to fairly raise two related arguments that Mr. Jackson later raised in federal district court. Namely, he did not make appellate-ineffectiveness arguments concerning failure to argue that trial counsel was ineffective for not introducing certain evidence supporting a self-defense theory and for not investigating a prior altercation involving the victim and her son. Trial counsel's failure to introduce this

18

evidence or investigate this altercation is nowhere alleged to be deficient in Mr. Jackson's briefing before the Utah Court of Appeals. Because these arguments were not made, the Utah Court of Appeals did not address them.

## 2. District Court Analysis

The district court held that the Utah Court of Appeals reasonably applied *Strickland* in denying Mr. Jackson's appellate-ineffectiveness claim. As to the aspect of the claim related to the self-defense jury instructions, the district court held that Mr. Jackson had failed to "address[] the court of appeals' conclusion that there was no prejudice" resulting from any deficiency. R. at 607. And then, "regarding ineffective assistance of appellate counsel as a whole," the district court noted that Mr. Jackson "does not suggest any United States Supreme Court on-point case law exists that is at odds with the court of appeals' result." *Id.* Thus, it concluded that, "[b]ased on *Strickland*, the Utah Court of Appeals was right to analyze how counsel's performance may or may not have been deficient or prejudicial, and, on the basis that it was not, reject Petitioner's ineffective-assistance-of-counsel claims." *Id.* at 608.

## 3. Disposition

Reasonable jurists could not disagree with the district court's resolution of the appellate-ineffectiveness claim.

Mr. Jackson identifies *Strickland* as the clearly established law governing

this claim.[5]  While *Strickland* can serve as clearly established law, *see Williams v. Taylor*, 529 U.S. 362, 391 (2000), "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial," *Johnson v. Carpenter*, 918 F.3d 895, 900 (10th Cir. 2019) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).  "A *Strickland* claim will be sustained only when (1) 'counsel made errors so serious that counsel was not functioning as "counsel"' and (2) 'the deficient performance prejudiced the defense.'"  *Id.* (quoting *Strickland*, 466 U.S. at 687).  This standard is "highly deferential."  *Strickland*, 466 U.S. at 689.  And, on top of that, AEDPA—more specifically, 28 U.S.C. § 2254(d)(1)—requires us to ask whether the state court's application of *Strickland* was contrary to or an unreasonable application of that clearly established law.

"Thus, '[t]he standards created by *Strickland* and § 2254(d) are *both* highly

---

[5]  Mr. Jackson cites several other Supreme Court decisions in his appellate-ineffectiveness argument, but none provides relevant guidance beyond that provided by *Strickland*'s general standards.  *See Williams v. Taylor*, 529 U.S. 362, 398–99 (2000) (holding petitioner was entitled to habeas relief because of ineffective assistance of trial counsel in gathering mitigation evidence for sentencing); *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (holding petitioner was not prejudiced by trial counsel's failure to object to sentencing enhancement); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) (acknowledging that ineffective assistance of appellate counsel can serve as cause for a procedural default but holding that petitioner had not demonstrated ineffectiveness); *United States v. Cronic*, 466 U.S. 648, 658–59, 666–67 (1984) (holding that a finding of ineffective assistance of trial counsel must be based on actual specified errors and not merely the circumstances surrounding the representation); *cf. House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008) ("[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.").

20

deferential, and when the two apply in tandem, review is doubly so.'" *Johnson*,

918 F.3d at 900 (alteration in original) (emphasis added) (quoting *Richter*, 562

U.S. at 105); *accord Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017),

*cert. denied*, 138 S. Ct. 978 (2018). More specifically, "[w]hen § 2254(d)

applies, the question is not whether counsel's actions were reasonable. The

question is whether there is *any reasonable argument* that counsel satisfied

*Strickland*'s deferential standard." *Ellis*, 872 F.3d at 1084 (quoting *Richter*, 562

U.S. at 104). Under this doubly deferential standard of review, Mr. Jackson has

failed to demonstrate that reasonable jurists could disagree about whether the

Utah Court of Appeals reasonably determined that his appellate counsel's

performance was not constitutionally deficient. We explain why.

We start with Mr. Jackson's appellate-ineffectiveness argument concerning

failure to raise trial counsel's failure to challenge the self-defense jury

instructions. The Utah Court of Appeals rejected this argument because "the jury

instructions correctly stated the . . . burden of proof," and so appellate counsel

was not ineffective for not arguing that trial counsel was deficient for not

challenging the instructions. *Jackson II*, 332 P.3d at 400. Moreover, as the

district court observed, Mr. Jackson's arguments do not call into question the

reasonableness of the Utah Court of Appeals's related prejudice

determination—that is, its conclusion that appellate counsel was not ineffective

21

for failing to raise the instructional claim because appealing "the issue would not have resulted in reversal." *Id.*

Mr. Jackson's response boils down to only the general argument that "[t]he instructions were insufficient to convey to the jury . . . the burden of disproving the asserted self-defense defense." Aplt.'s COA Br. at 18. Putting aside the fact that the Utah cases that Mr. Jackson cites have approved of similar instructions, *see, e.g.*, *State v. Knoll*, 712 P.2d 211, 215 (Utah 1985), it is not our role under § 2254 to second-guess a state appellate court's determination of the sufficiency *under state law* of jury instructions, *see, e.g.*, *Bland v. Sirmons*, 459 F.3d 999, 1016–17 (10th Cir. 2006); *Boyd v. Ward*, 179 F.3d 904, 917 (10th Cir. 1999). Therefore, Mr. Jackson's response is not sufficient to generate a disagreement among reasonable jurists concerning the correctness of the district court's resolution of this aspect of Mr. Jackson's appellate-ineffectiveness claim.

Next, we turn to Mr. Jackson's appellate-ineffectiveness argument concerning failure to raise trial counsel's failure to object to the trial court's prior-bad-acts ruling and subsequent advice to Mr. Jackson not to testify in his own defense. Mr. Jackson's argument that *appellate* counsel was ineffective on this score only amounts to a paragraph-long recitation of the facts in the "Statement of Facts" section of his brief. Aplt.'s COA Br. at 5–6.

In that discussion, he does not address the Utah Court of Appeals's opinion

22

or provide any argument about how or why that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  Likewise, while Mr. Jackson's "Statement of Facts" concerning his *trial*-ineffectiveness claim contains a similar factual recitation, Aplt.'s COA Br. at 4, his substantive arguments pertaining to both his appellate- and trial-ineffectiveness claims do not mention theories of ineffectiveness related to trial counsel's actions in connection with the prior-bad-acts ruling or provide any authority supporting such theories.  Aplt.'s COA Br. at 10–17, 18–21.  Thus, we could hold that Mr. Jackson waived further review of these aspects of his appellate-ineffectiveness claim.  *See Tiger v. Workman*, 445 F.3d 1265, 1267 n.1 (10th Cir. 2006) ("In his application for a COA, Tiger lists all ten of the issues presented to the federal district court as '[i]ssues to be raised on appeal.' However, he presents argument only on the two jury instruction issues.  Thus, the other issues are waived."); *United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir. 2003) (holding that the appellant waived his claim on appeal "because he failed to address that claim in either his application for a COA or his brief on appeal"); *Hill v. Allbaugh*, 735 F. App'x 520, 522 n.2 (10th Cir. 2018) (unpublished) (noting petitioner "has waived appellate review of the other issues presented in his habeas petition to the district court by failing to address them in his briefing to this court").

But even if this briefing was sufficient to preserve Mr. Jackson's arguments, it is unavailing on the merits. As the district court noted, Mr. Jackson "does not effectively address the matter of possible strategy, nor does he address how his retrospective, subjective perspective of his counsel's performance . . . square[s] with the court of appeals' more objective perspective, as supported by the record." R. at 607. Mr. Jackson acknowledged in briefing before the Utah Court of Appeals that, had he testified that he was acting in self-defense, the trial court had ruled that the State would be allowed to submit evidence that Mr. Jackson had murdered his first wife and previously committed domestic violence. *See also Jackson I*, 243 P.3d at 912 (noting, in analyzing sentencing issues, that Mr. Jackson had previously "serv[ed] time for killing his wife and for a parole violation related to another domestic violence incident"). As Mr. Jackson concedes, this information would have been very prejudicial in this case involving violence against an estranged girlfriend.

Applying our doubly-deferential standard of review, we cannot say that there was no reasonable argument that appellate counsel satisfied *Strickland* by *not* arguing trial counsel was ineffective for failing to object to the trial court's prior-bad-acts ruling and for advising Mr. Jackson not to testify in his own defense. *See Ellis*, 872 F.3d at 1084; *Johnson*, 918 F.3d at 900.

Finally, we turn to Mr. Jackson's appellate-ineffectiveness arguments

24

concerning failure to argue that trial counsel was ineffective for not introducing certain evidence supporting Mr. Jackson's self-defense theory and for not investigating a prior altercation involving the victim and her son. These contentions—which are distinct aspects or sub-claims of Mr. Jackson's overarching appellate-ineffectiveness claim—are mentioned only in the "Statement of Facts" section of Mr. Jackson's brief, and he presents no argument or authority in support of them. Thus, we could deem these contentions waived. *See Tiger*, 445 F.3d at 1267 n.1; *Springfield*, 337 F.3d at 1178; *Hill*, 735 F. App'x at 522 n.2.

Moreover, because Mr. Jackson did not present these ineffective-assistance sub-claims in post-conviction briefing to the Utah Court of Appeals, we may apply an anticipatory procedural bar to them because—like Mr. Jackson's other ineffective-assistance claims—they could have been raised in that briefing. *See* UTAH CODE § 78B-9-106(1)(d) (stating that "[a] person is not eligible for relief under this chapter [i.e., for post-conviction relief] upon any ground that . . . (d) was raised or addressed in any previous request for post-conviction relief or *could have been, but was not, raised* in a previous request for post-conviction relief" (emphasis added)); *Thacker v. Workman*, 678 F.3d 820, 841 (10th Cir. 2012) (explaining that the defendant needed to "overcome an 'anticipatory procedural bar' to proceed on his ineffective assistance claim" because if he were

25

"to now return to state court to attempt to exhaust a claim that trial counsel was ineffective . . . , it would be procedurally barred" under state law); *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." (quoting *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002))).

"The only way for [Mr. Jackson] to circumvent this anticipatory procedural bar is by making either of two alternate showings: he may demonstrate 'cause and prejudice' for his failure to raise the claim in his initial application for post-conviction relief, or he may show that failure to review his claim will result in a 'fundamental miscarriage of justice.'" *Thacker*, 678 F.3d at 841–42 (quoting *Anderson*, 476 F.3d at 1140). But Mr. Jackson makes neither argument as to the additional sub-claims of ineffective assistance at issue, and so these sub-claims are procedurally barred.

In sum, reasonable jurists could not disagree with the district court's determination that, under *Strickland*, Mr. Jackson has failed to establish that the Utah Court of Appeals's decision concerning his appellate-ineffectiveness claim was contrary to or an unreasonable application of clearly established Supreme Court law. He is not entitled to a COA on this claim.

26

**D.      Claim Four: Ineffective Assistance of Trial Counsel Claim**

Mr. Jackson also seeks relief on a distinct claim of ineffective assistance of *trial* counsel.  Namely, Mr. Jackson's brief in this court—construed liberally, *Lankford*, 853 F.3d at 1121–22—argues that trial counsel failed to object to the self-defense instructions discussed above, improperly discouraged him from testifying that he acted in self-defense, failed to introduce certain evidence that would have supported the self-defense theory, and failed to investigate a prior altercation involving the victim and her son.  But this trial-ineffectiveness claim is partially waived and entirely procedurally barred, and Mr. Jackson cannot overcome the procedural bar.  Therefore, reasonable jurists could not disagree with the district court's resolution of this claim.  We deny Mr. Jackson's request for a COA on this issue.

**1.      Claim Raised**

In post-conviction briefing before the Utah Court of Appeals, Mr. Jackson raised a claim that trial counsel was ineffective for failing to object to the self-defense jury instructions.  The Utah Court of Appeals rejected this claim because it could have been raised on direct appeal, and Mr. Jackson failed to demonstrate, as grounds for overlooking this failure, that his direct-appeal counsel was ineffective for failing to argue trial counsel's ineffectiveness.  *See Jackson II*, 332 P.3d at 399–400; *see* UTAH CODE § 78B-9-106(1)(c), 3(a) (stating that "[a] person

27

is not eligible for relief under this chapter [i.e., for post-conviction relief] upon any ground that . . . (c) could have been but was not raised at trial or on appeal"; but "[n]otwithstanding Subsection (1)(c), a person may be eligible for relief . . . if the failure to raise that ground was due to ineffective assistance of counsel").

In federal district court, Mr. Jackson's petition did not present a stand-alone *trial*-ineffectiveness claim on this jury-instructions issue, although it did reference the alleged "failures of both defense counsel at the jury trial and appellate counsel" in advancing a related *appellate*-ineffectiveness argument. R. at 11–12 (Pet. Under § 2254, filed Apr. 8, 2015). Mr. Jackson's reply brief in district court more clearly raised this jury-instructions theory as a distinct trial-ineffectiveness argument.

As to Mr. Jackson's other trial-ineffectiveness arguments, we observed *supra* that, in the aforementioned post-conviction briefing, Mr. Jackson raised an *appellate*-ineffectiveness claim concerning failure to argue that trial counsel improperly discouraged Mr. Jackson from testifying that he acted in self-defense. The Utah Court of Appeals concluded that Mr. Jackson's briefing included a freestanding contention that *trial* counsel was ineffective for advising Mr. Jackson not to take the stand, but it rejected this aspect of Mr. Jackson's claim. *See Jackson II*, 332 P.3d at 400 ("Jackson also argues that the trial court inappropriately prevented him from testifying and that *trial* and appellate counsel

28

were ineffective for failing to raise the issue. . . . Because Jackson's argument has been rejected, neither *trial* nor appellate counsel were ineffective in failing to raise the issue." (emphases added)). Mr. Jackson's federal habeas petition included this trial-ineffectiveness theory.

Finally, Mr. Jackson's briefing before the Utah Court of Appeals did not raise sub-claims that trial counsel was ineffective for failing to introduce certain evidence allegedly supporting the self-defense theory or for failing to investigate a prior altercation involving the victim and her son. These theories of ineffectiveness first appeared in Mr. Jackson's federal habeas petition.

### 2. District Court Analysis

The district court concluded that "some of the ineffective assistance of counsel grounds are procedurally defaulted," but it did not specifically address the different aspects of Mr. Jackson's arguments concerning trial counsel's ineffectiveness. R. at 595. It generally concluded that Mr. Jackson's "procedurally defaulted claims are . . . denied." *Id.* at 597.

### 3. Disposition

Reasonable jurists could not disagree with the district court's denial of the trial-ineffectiveness claim because it was partially waived and entirely procedurally barred.

First, the jury-instructions aspect of the trial-ineffectiveness claim was

29

waived in district court. As we have mentioned, Mr. Jackson's habeas petition did not discuss trial counsel's failure to object to the jury instructions as part of a *trial*-ineffectiveness claim; that discussion was only included in a claim concerning *appellate* counsel. And because trial- and appellate-ineffectiveness claims are distinct, that is not good enough to preserve the former for review. *See Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) ("We fail to see how a claim based on trial counsel's ineffectiveness merely amplifies a claim based on appellate counsel's ineffectiveness."); *Manning v. Patton*, 639 F. App'x 544, 547 n.1 (10th Cir. 2016) (unpublished) (noting that petitioner "does not point to any case holding that an ineffective appellate counsel claim carries with it an ineffective trial counsel claim"). Failure to include this claim in his petition resulted in waiver of this claim. *Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015) ("Because the argument was not raised in his habeas petition, it is waived on appeal."); *accord Grant*, 886 F.3d at 909 (collecting cases).

Second, even if we liberally construe Mr. Jackson's petition to have included the jury-instructions aspect of the trial-ineffectiveness claim, the entire claim must fail because it is procedurally barred. The Utah Court of Appeals concluded that both the jury-instructions and the advice-not-to-testify aspects of the trial-ineffectiveness claim were procedurally barred in state court because they were not brought on direct appeal and because Mr. Jackson failed to

30

demonstrate, as grounds for overlooking this failure, that his direct-appeal counsel was ineffective for failing to present a trial-ineffectiveness claim. Mr. Jackson has not made any argument that the procedural bar that the Utah Court of Appeals invoked is not adequate or independent. *See, e.g.*, *Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) "a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement," and (2) "the state judgment rests on independent and adequate state procedural grounds."'" (alterations in original) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011))).

Consequently, Mr. Jackson must demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome this bar. *See, e.g.*, *Hammon v. Ward*, 466 F.3d 919, 925–26 (10th Cir. 2006); *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999). He has not done so. As most relevant here, as our analysis *supra* makes clear, Mr. Jackson has not demonstrated cause and prejudice through a meritorious showing of ineffective assistance of appellate counsel. *See, e.g.*, *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 747 (10th Cir. 2016) ("A claim of ineffective assistance of appellate counsel can serve as cause and prejudice to overcome a procedural bar, if it has merit.").

And while the Utah Court of Appeals did not address the aspects of Mr.

Jackson's trial-ineffectiveness claim concerning failure to introduce evidence supporting the self-defense theory and failure to investigate a prior altercation involving the victim and her son, that was only because Mr. Jackson did not present these aspects of his trial-ineffectiveness claim to that court. Thus, we apply an anticipatory procedural bar to these aspects of this claim because—like Mr. Jackson's other trial-ineffectiveness arguments—they could have been made on direct appeal but were not. *See Thacker*, 678 F.3d at 841. And, as above, Mr. Jackson has not demonstrated cause and prejudice or a fundamental miscarriage of justice to overcome this bar.

Accordingly, even if Mr. Jackson's trial-ineffectiveness claim or some distinct components thereof were adequately presented in district court, the claim is entirely procedurally barred. Thus, reasonable jurists could not disagree with the district court's resolution of this issue, and Mr. Jackson is not entitled to a COA.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** Mr. Jackson's application for a COA as to each claim and **DISMISS** this matter.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge